# THE UNITED STATES DISTRICT COURT
# OF THE DISTRICT OF COLUMBIA

Captain Melvin Gresham   )
4700 Main St.      )
Capital Heights, MD 20743   )
          )
     Plaintiff,   )
          ) Case No. _____
   v.       )
          )
Chief Cathy Lanier    )
Chief of Police      )
District of Columbia Metro. Police Dept. )
300 Indiana Ave., NW    )
Washington, D.C. 20001   )
          )
   and      )
          )
Assistant Chief Jose Acosta   )
District of Columbia Metro. Police Dept. )
300 Indiana Ave., NW    )
Washington, D.C. 20001   )
          )
   and      )
          )
Exec. Assistant Chief Michael Fitzgerald )
District of Columbia Metro. Police Dept. )
300 Indiana Ave., NW    )
Washington, D.C. 20001   )
          )
   and      )
          )
Lieutenant Michael A. Smith   )
District of Columbia Metro. Police Dept. )
300 Indiana Ave., NW    )
Washington, D.C. 20001   )
          )
   and      )
          )
Officer Jose L. Rodriguez,   )
District of Columbia Metro. Police Dept. )
300 Indiana Ave., NW    )
Washington, D.C. 20001   )
          )
   and      )

Captain Ralph W. McLean                )
District of Columbia Metro. Police Dept. )
300 Indiana Ave., NW                   )
Washington, D.C. 20001                 )
                                       )
          and                          )
                                       )
District of Columbia Metro. Police Dept. )
300 Indiana Ave., NW                   )
Washington, D.C. 20001                 )
                                       )
**SERVE - Defendants via service on:** )
Denise Fields, Esq.                    )
Agent for Service of Process           )
Assistant Attorney General             )
for District of  Columbia              )
441 4th St., NW Suite 600 South        )
Washington, D.C.  20001                )

## COMPLAINT

NOW COMES Captain (Cpt.) Melvin R. Gresham, hereinafter "Cpt.

Gresham" or "Plaintiff" with a complaint alleging Retaliation under the Federal

Whistleblower Protection Act Retaliation under the District of Columbia

Whistleblower Protection Act, Defamation, Breach of Contract, and Intentional

Infliction of Emotional Distress.

## **PARTIES**

1.    Cpt. Gresham is a twenty three (23) year veteran of the District of

Columbia Metropolitan Police Department, who has served the City's Citizens

with distinction.   He is known within the Police Department as a no-nonsense

professional with an uncompromising sense of ethics and fairness.

2.    Chief Cathy Lanier, is the police chief of the District of Columbia

Metropolitan Police Department, who authorized false charges be levied against

Cpt. Gresham in retaliation for his reporting of criminal acts within the

2

Department and his refusal to support retaliatory acts against fellow police officers.

3.    Assistant Chief (AC) Jose Acosta ordered Cpt Gresham to participate in an scheme of retaliation against Commander Winston Robinson, which he refused to do.

As a direct result of that refusal, Cpt. Gresham was himself targeted for retaliation by Senior Managers in the District of Columbia Metropolitan Police Department.

4.    Executive Assistant Chief (EAC) Michael Fitzgerald refused to investigate allegations of unethical and criminal wrongdoing lodged by Cpt. Gresham, to District of Columbia Metropolitan Police Department authorities, and to Department of Justice Monitors.  As a result of his complaints, Cpt. Gresham was DENIED promotions and assignments necessary for progression within the Department.

5.    Lt. Michael Smith is a career police officer with a history of misconduct, acts of harassment, brutality, misrepresentations under oath, fabrication of evidence, concealment of evidence and continuing conduct that long since warrant his discharge from the Police Department.  Chief Lanier or agents authorized by her conspired with Michael Smith to target Cpt Gresham for retaliatory discharge and did charge him with abuse of power.

## JURISDICTION

6.    Title 5 U.S.C. 2301(b)(8), D.C. Code § 1-615.51 et seq. (2001), § 1367 (supplemental jurisdiction – Defamation; Breach of Contract; and

Intentional Infliction of Emotional Distress). The plaintiff claims diversity jurisdiction based upon the domicile and amount in question.

## FACTS

7.     Assistant Chief (AC) Jose Acosta ordered Cpt. Gresham to "set up" Commander Winston Robinson, in order for the latter to be discharged from employment by managers at the District of Columbia Metropolitan Police Department (DCMPD). Cpt. Gresham's superior, AC Acosta instructed Cpt. Gresham Gresham to assist him in "getting rid of Commander Robinson" and required Cpt. Gresham to assist in sabotaging Commander Robinson's leadership initiatives. AC Acosta informed Cpt. Gresham that he was acting at the behest of the "Chief" and if Cpt. Gresham did not assist in the effort, he himself would be targeted.

8.     Cpt Gresham refused to participate in the retaliatory acts and complained of the matter in writing to Executive Assistant Chief (EAC) Michael Fitzgerald. EAC Fitzgerald acknowledged receipt of the complaint and asked Cpt. Gresham "what actions [he] wanted taken." Cpt. Gresham requested an investigation of the matter and the institution of a Code of Conduct that would transform the department into a professional force.

9.     EAC Fitzgerald was required to investigate the complaint per the Memorandum of Agreement with the City of Washington, D.C. Metropolitan Police Department and the Justice Department signed in June 2001. Ex. 1. Under this agreement all complaints of misconduct against the District of Columbia Metropolitan Police Department had to be investigated and a final

report submitted within 90 days. Ex. **2**. EAC Fitzgerald refused to investigate the allegations and instead distanced himself from Cpt. Gresham.

10. In 2004, Cpt. Gresham was ordered to "target" Lt. Ronda Nunnally and to assist other uniformed officers in driving her from the police workforce. Lt. Nunnally is an eighteen (18) year police veteran, the only female to earn the Medal of Honor, and has also earned the Medal of Valor for service above and beyond the call of duty.

11. Lt. Nunnally's superior Phillip Graham, a Mayoral Appointee to the District of Columbia Metropolitan Police Department as the Chief Information Officer, sexually assaulted, sexually battered, harassed and subjected Lt. Nunnally to a hostile work environment. Lt. Nunnally filed an EEO complaint with the DCMPD Diversity and EEO Compliance Unit and Internal Affairs Division. The investigative report substantiated the complaint and recommended that Mr. Graham be discharged, Ex. **3**, and he was discharged.

12. Senior Police Managers, sympathetic to Mr. Graham targeted Lt. Nunnally for retaliation. She was physically assaulted by Lt. Delgado and threatened with serious bodily harm. Cpt. Gresham witnessed the assault and attempted to arrest Lt. Delgado, but was barred from doing so by superiors. Subsequent to the incident, Cpt. Gresham witnessed formalization of a process and procedures intended to drive Lt. Nunnally from the workplace. He intervened when and where he could and agreed to testify on her behalf in her civil action (Nunnally v. District of Columbia, et al., 2004 CA 005963 B).

13. The Chief of Police, and agents in the Office of the Mayor acted for

5

the purpose of protecting Mr. Graham from criminal and civil prosecution and sought to solicit Captain Gresham in their conspiracy. He refused. It is significant to this complaint that Lt. Delgado, the uniformed officer who assaulted Lt. Nunnally, and whom Cpt Gresham attempted to arrest, but was barred from doing so. Chief Lanier promoted Lt. Delgado above Cpt. Gresham to Inspector, without the formality of her being promoted to Captain. Cpt. Gresham was then assigned to Lt. Delgado in what can only be a retaliatory act.

14.    In October 2007, Assistant Attorney General (AAG) Steve Anderson and AAG K. Featherstone, co-counsels for the District of Columbia in Nunnally, requested a meeting with Cpt. Gresham. At the meeting they offered him a promotion and a prestigious assignment to Police Headquarters if he changed his testimony and DENIED that "he had been instructed to 'target' Lt. Nunnally and drive her from the workplace." These offers could only be made per authorization of Chief Lanier.   Cpt. Gresham reported these attempts to suborn perjury to counsel for Lt. Nunnally, who moved for sanctions. AAG Ronald Harris sought a meeting with Cpt. Gresham to discuss his affidavit alleging that AAG Anderson and AAG Featherstone attempted to bribe him.

15.    Cpt. Gresham reported the attempt to bribe him to undersigned, which promptly filed a motion in the Nunnally action to sanction the respective attorneys. Cpt. Gresham also produced an affidavit of the unethical conduct, Ex. 4, which was filed in Nunnally.  Superior Court Judge Natalie Combs-Green refused to permit Cpt. Gresham to testify as to the unethical behavior of the Assistant Attorney Generals.  At a hearing held on February 27, 2008, Ex. 5,

6

Judge Combs-Green stated as follows:

Page 2:

21    [THE COURT] I thought it appropriate to have a hearing, if
22    for no other reason to permit the parties an opportunity in
23    open court to briefly express themselves and to give the
24    **Court, quite frankly, the opportunity to express my**
25    **disappointment at this type of filing.  Particularly, I**
26    **guess, the type of language that was used in the filing,**

Page 3:

1    and upon closer examination, the sort of, and I will
2    make specific reference, **careless throwing around of names**
3    **in the pleadings, which could be injurious to the**
4    **professional stature of all the attorneys** involved, and
5    which I think diminishes our system for all of us of
6    justice.  So, in courtroom 217 on February 27, 2008, at
7    this moment, I would say, as a preliminary matter, **I**
8    **find this very sad moment in the practice of law and in**
9    **our judicial system**.  And I am hopeful that by the end of
10    proceeding we will come to a more hopeful and decent
11    place in time.

Page 5:

4    THE COURT:    So, my question is, **why would you**
5    **file this motion?**
6    MR FIREISON:  [FRISON] First off, Your Honor, we've got
7    witnesses within the courtroom and I'd like to invoke
8    rule on witnesses.
9    THE COURT:  My question is, **I'm not doing the**
10    **evidentiary hearing, why should you file the motion?**

* * * * * * * * * * * * * * *

Page 11:

16    MR [FRISON]:    Your Honor, once again, I invoke
17    the rule on witnesses, we've got witnesses here in the
18    courtroom that are going to testify to this matter.
11    THE COURT:  **Well, they may or may not**.  But I
12    will say, if anyone is going to be a witness in this
13    matter, would you please exit at this time.  Wait in the
14    witness room, or if you thing you may be a witness.

7

Page 42:

2     THE COURT:    In this kind of broad, **even if you**
3   **think it, Mr. Fireison, my suggestion, as members of the**
4   **Bar,** because, I think, the problem is, as the old folks
5   say, I better not say that.
6        MR.  FIREISON:  No, no but I hear you.
7        THE COURT:  I take that back. **You lay down with**
8   **dogs, you get up with fleas**.  I mean, you may hurt yourself
9   more that you're attempting to hurt someone else.  I think
10  it's very dangerous, so I'm just saying, I think you would
11  want to be very measured, **because even if a member of our**
12  Bar thinks that other counsel or opposing counsel has
13  **engaged in behavior that they should not have engage in,**
14  **or that was inappropriate, or unbecoming, or whatever.**
15      I think in any filing or any letter, it has to,
16  **you ought to really measure your language.  Because if**

you

17  get your opportunity to bring all of that before whatever
18  tribunal is appropriate to bring it before, then it will be
19  heard, and then the tribunal can say, well, you know, we
20  find that this was inappropriate, or we find that this
21  happened or we find that that happened, or what have you.
22  I'm just, because, you know what?  I know that if you
23  picked up a pleading and saw this about yourself, that you
24  would be apoplectic.  It's not, **this is a very serious**
25  **matter, it's very serious, because it puts people's**
26  **licenses in jeopardy, their professional standing in**

Page 43

1   jeopardy, their job.

* * * * * * * * * * * * * *

11      THE COURT:  Because you and I both know that **in**
12  **the old days, before there was e-mail and all of this**
13  **stuff, that you may say something to me in the hallway**, if
14  you put that same statement in writing, you know I'm going
15  through the roof.  Because if you say it to me in the
16  hallway by the telephone, **and maybe no one's around**, or
17  maybe one person's around, **that's between us**.  But when
18  it's in writing, now it's like, are you kidding me?

* * * * * * * * * * * * * *

8

Page 44

26          THE COURT:  And that is why I was so disturbed at

Page 45

1    the nature, I have never seen a pleading like this.  Well,
2    I take that back, **I actually have seen a pleading like this**
3    **where a lawyer put it about me, and there was these kinds**
4    **of things made.  And I can tell you, it did not feel good**,
5    even though I knew not a shred of it was true.  It doesn't
6    feel good.

16.     Here Judge Combs-Green made clear the basis for her hostility

towards the motion for sanctions filed by undersigned against the defendants

was that a similar filing had been made against her.  Judge Combs-Green refusal

to permit Cpt. Gresham to testify in <u>Nunnally</u>, despite their being no dispute that

the Assistant Attorney Generals suborned perjury, makes it clear that Cpt.

Gresham can not obtain justice in the District of Columbia Superior Court system

and undermines that entire judicial process.

17.     On October 6, 2007, Lt. Michael Smith was accused of harassing

Lt. Alberto Java.  The allegation were investigated and substantiated.  Cpt.

Gresham was Lt. Smith's senior and counseled him about his conduct.

18.     On October 6, 2007, Lt. Smith was accused of harassing Lt. Alberto

Java.  The allegations against Lt. Smith was investigated and substantiated.  Cpt.

Gresham was Lt. Smith's senior and counseled him about his harassment of

fellow officers.  Lt. Smith blamed Cpt. Gresham for his being accused.

19.     In March 2008, Lt. Smith was reprimanded for violations of

Department policy concerning the mailing of tickets to those charged with

violations.  On information and belief, Ms. Wright will testify that Lt. Smith's

remarks and demeanor brought discredit to the uniform he wears and the department to which he belongs. Cpt. Gresham was the officer affirming Lt. Smith's violations and Lt. Smith swore to get back at him.

20.    In April 2008, Lt. Smith was disciplined for Misconduct. Cpt. Gresham counseled Lt. Smith about his unprofessional behavior in that incident. Ex. **6**. Because of the sheer volume of the investigative report, only the first and last page is attached. Noteworthy therein is the finding that "Lieutenant Michael A. Smith was involved in retaliatory and harassing conduct is **SUSTAINED** and that he be recommended for Adverse Action . . ."

21.    Lt. Smith has an extensive history of disciplinary problems yet Chief Cathy Lanier keeps him in good standing, on the payroll and free from any disciplinary action that might harm his career in the DCMPD.

22.    On about January 7, 2008, an allegation was made anonymously that Cpt. Gresham had abused his police powers by using his rank to influence and intimidate the investigating officer to alter the investigative report. Ex. **7**.

23.    It has been reported by video and print news media staff that Tracy Hughes, spokesperson for Chief Lanier was the person who "leaked" the allegations to the media that Cpt Gresham had been involved in an accident in a police scout car while on duty. This information was published in print media and broadcast on video news over Local News Channels 5 and 7 with the conclusion that he was guilty and would be prosecuted. Cpt. Gresham was described as a police officer that had abused his power to avoid liability in an accident with a metro bus.

24.    A comparison of the one page anonymous letter to the transcript testimony of Lt. Smith, Ex. **8**, provides probative evidence that the anonymous letter was more likely than not written by Lt. Smith.  There is a unique similarity in the description of events, scene, and conduct of the parties. In his testimony to the investigation officer Lt. Smith speaks as if with personal knowledge of the wealth of Cpt. Gresham and other personal matters.  In the letter the anonymous writer speaks with authority as to Cpt. Gresham's desire to avoid his insurance being increased.  This similarity was communicated to senior managers at DCMPD.

25.    Most disturbing is the admission by Lt. Smith at page 4 that he interfered with the investigation by the "couple of things that I brought to the attention of the, bus supervisor" and his admission at page 4 that he tampered with evidence by placing removing a piece of evidence from where he allegedly found it, placing it in his pocket, and then later telling the officer where it was found so that it might be included in the report as if the officer writing the report had discovered it and relied upon its significance in detailing fault.  Other issues such as Lt. Smith's admitted repeated conversations with the officer, the bus driver, and the Metro Supervisor cause concern because Lt.  Smith was off duty and had no actual basis for interjecting himself into the investigation.  He could have called for an on duty supervisor to respond but did not do so.

26.    When these acts are superimposed on his unsolicited comments at page 14, that Cpt. Gresham was worth a "million dollars" and his criticism of Cpt. Gresham at pages 14 – 16, it is reasonable to conclude that it was Lt. Smith who

11

sought to implicate Cpt. Gresham and did so by the anonymous letter in

retaliation for Cpt. Gresham's prior disciplinary measures against him.

27.    Despite the history of misconduct by Lt. Smith, and his criminal

conduct in the investigation of the accident involving Cpt. Gresham, Chief Lanier

directed that Cpt. Gresham be charged and summoned before a trial board with

the intent he be discharged from the police force.  Ex. **9**.  Cpt. Gresham filed his

opposition.  Ex. **10** and gave NOTICE to the Mayor of his intent to file a civil

action for the history of retaliation against him by the Chief and other senior

police officials.  Ex. **11**.  The Office of the Mayor acknowledged receipt of the

Notice.  Ex. **12**.

28.    Senior managers at the police department withdrew the charges

against Cpt. Gresham, however Chief Lanier insisted on serving Cpt. Gresham

an official reprimand.  Ex. **13**.  Therein the reprimand reads:

> Internal Affairs Agent Denise Garrett investigated the alleged
> misconduct.  Agent Garrett determined that your demeanor and
> subsequent confrontation with the reporting officer was intimidating
> and may have jeopardized the impartiality of the accident
> investigation.

29.    At Ex. **14** Cpt Gresham rejected the reprimand and notes that its

issuance violated District of Columbia Statute § 5-1031 (a), Ex. **2**, bars

disciplinary action if such is not brought within 90 days after NOTICE.  The

evidence in undisputed that DCMPD was on NOTICE on 11/27/07 of the alleged

offense by Cpt. Gresham, Ex. **15,** and that the 90 day date was 04/04/2008.  The

dates at the 60 day report dated March 25, 2008 was affirmed at the 60 day

report dated April 4, 2008.  Ex. **16**.  DCMPD did not initiate the disciplinary action until May 2, 2008.  Ex. **9**..

30.     Agent Denise Garrett will testify that she found no basis for charging Cpt. Gresham, however she was pressured by her superior, Captain Ralph W. McLean to produce a report that justified the discharge of Cpt. Gresham.  Agent Garrett decided upon the least punitive action available to her, that of an Official reprimand and changed her report under pressure to reflect that recommendation.  Ex. **17**.  Her supervisors then filed a "Dissent Regarding the Proposed Penalties Recommended in the Case of Captain Melvin Gresham." Ex. **18**.  The reprimand reads in part:

> This official reprimand is a written censor being issued to you as a formal notice of your unsatisfactory conduct.  This notice will be considered in performance evaluations and will be used in deciding greater degrees of disciplinary action within a three-ear period.

31.     The disciplinary action levied against Cpt. Gresham clearly effected his qualify to life, and adversely effected his career opportunities and continued employment.  And the retaliatory acts orchestrated by Chief Lanier and her surrogates have caused severe emotional harm to Cpt. Gresham, his mother and grandmother.[1]  Cpt. Gresham has suffered the loss of his good name, has been DENIED promotions, and subjected to a hostile work environment all in

---

[1] Chief Lanier has a history of abusing her subordinates and retaliating against officers that she dislikes.  Only a significant award of damages will Chief Lanier be deterred from continued abusive and unethical behavior. Attorney fees amount to 35% of any judgment, settlement, or money award.

retaliation for his Whistleblower activities and his refusal to participate in illegal acts of retaliation against fellow police officers.

32.     The Justice Department responded to the complaint filed by Cpt. Gresham against AC Acosta and EAC Fitzgerald on about May 15, 2008.  Ex. 19. Based upon the above facts, Cpt. Gresham alleges the following causes of action:

**COUNT I**
**(Title 5 U.S.C. 2301(b)(8))**

33.     Incorporating paragraphs 1- 32 as if stated herein, Cpt. Gresham alleges that Chief Lanier by way of her agents at the District of Columbia Metropolitan Police Department initiated  adverse action against him in retaliation for his complaints to the Justice Department that agents of the Police Department had violated the Joint Memorandum of Agreement between the Justice Department and the District of Columbia Metropolitan Police Department.

34.     As a direct result of his complaints, Cpt. Gresham was DENIED promotion, and made to suffer the promotion of Lt. Delgado, a less qualified subordinate to a position superior to him and he then forced to work for that former subordinate. The Denial of promotion and his subsequent subordination to those less qualified promoted over him constitutes a contributing factor to Cpt Gresham's allegation of retaliation.

35.     Cpt. Gresham seeks compensatory damages in the amount of $100,000,000 and punitive damages in the amount of $100,000,000, attorney's fees and cost.

14

fees[2] and cost.

## COUNT II
### (D.C. Code § 1-615.51 et seq.)

36.    Incorporating paragraphs 1- 35 as if stated herein, Cpt Gresham alleges that his superiors at the direction of Chief Cathy Lanier by and through Captain Ralph W. McLean took adverse retaliatory action for his refusal to join in retaliatory, discriminatory and harassing acts against other uniformed officers targeted for discharge by Chief Lanier or her surrogates.

39.    Lt. Michael Smith and Officer Jose L. Rodriguez conspired to falsify charges against Cpt Gresham alleging that he intervened by way of intimidation to influence an accident report written by Officer Rodriguez.  The Notice of Proposed Adverse Action, Ex. **9** and associated penalty is the contributing factor in the retaliation against Cpt. Gresham.

40.    Cpt. Gresham seeks compensatory damages in the amount of $100,000,000 and punitive damages in the amount of $100,000,000, attorney's fees and cost.

## COUNT III
### (D.C. Code § 1-615.51 et seq.)

41.    Incorporating paragraphs 1- 40 as if stated herein, Cpt Gresham alleges that his superiors at the direction of Chief Cathy Lanier by and through Captain Ralph W. McLean took adverse retaliatory action for his refusal to join in retaliatory acts against Lt. Ronda Nunnally and his reporting of attempts by Assistant Attorney General (AAG) Steve Anderson, AAG K. Featherstone, and

---

[2] Attorneys fees constitute 35% of any judgment or settlement.

AAG Ronald Harris, to suborn perjury by bribing him to change his testimony.  , discriminatory and harassing acts against other uniformed officers targeted for discharge by Chief Lanier or her surrogates.

42.    Chief Lanier instructed Cpt. Ralph W. McLean or overrule the recommendation of Agent Garrett and charge Cpt. Gresham in a manner that would result in his discharge from the police force.  The Notice of Proposed Adverse Action, Ex. 9 and associated penalty of discharge is the contributing factor in the retaliation against Cpt. Gresham.

43.    Cpt. Gresham seeks compensatory damages in the amount of $100,000,000 and punitive damages in the amount of $100,000,000, attorney's fees and cost.

## COUNT IV
### (Breach of Contract)

44.    Incorporating paragraphs 1- 43 as if stated herein, District of Columbia Metropolitan Police Department had a duty to Cpt. Gresham by way of the terms of employment to provide him every employment opportunity to be fairly considered for promotion, to avoid being targeted for retaliation, or otherwise harassed.

45.    The District of Columbia Metropolitan Police Department breached its duty to Cpt. Gresham by way of its agents, Assistant Chief Jose Acosta, and Executive Assistant Chief Michael Fitzgerald who acted for the purpose of retaliating against Cpt. Gresham for his refusal to join in retaliatory and discriminatory acts against other officers.

46.    That Cpt. Gresham was passed over for promotion and less qualified

officers promoted is the contributing factor in the claim for retaliation under **D.C. Code § 1-615.51 et seq.** for this breach of contract allegations.

47.    Cpt. Gresham seeks compensatory damages in the amount of $100,000,000 and punitive damages in the amount of $100,000,000, attorney's fees and cost.

**COUNT IV**
**(Defamation)**

48.    Incorporating paragraphs 1- 47 as if stated herein, Cpt Gresham alleges that Chief Cathy Lanier and other agents of the District of Columbia Metropolitan Police Department (1) made a false and defamatory statement alleging that Cpt. Gresham had used his police power to alter the investigating officer's report of an accident in which he was involved; (2) that agents of the District of Columbia Metropolitan Police Department published the statement without privilege to a third party the video news stations who ran a story, and to print media who printed stories alleging his abuse of police power; (3) that agents of the District of Columbia's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm and that its publication harmed Cpt. Gresham, his mother and grandmother.

49.    Cpt. Gresham seeks compensatory damages in the amount of $100,000,000 and punitive damages in the amount of $100,000,000, attorney's fees and cost.

**COUNT V**
**(Intentional Infliction of Emotions Distress)**

50.     Incorporating paragraphs 1- 49 as if stated herein, agents of the District of Columbia Metropolitan Police Department created an egregiously emotionally harmful environment with physical manifestations that has resulted in Cpt. Gresham suffering severe emotional distress.

51.     The conduct of agents of the District of Columbia Police Department at the behest of Chief Lanier, was willful, intentional, and done with malice and aforethought intended to cause harm and distress to Cpt. Gresham.

52.     Cpt. Gresham has been suffered severe emotional distress as to his professional,  reputation and sense of self.  He can no longer interact with peers, subordinates, superiors or the public without the public admonishment and accusations of his abuse of power effecting that interaction.  The irresponsible reporting that he abused his power is not negated by the withdrawal of that charge, nor does said withdrawal make him whole nor rebuild the reputation he amassed over his 23 years service.

53.     Cpt. Gresham seeks compensatory damages in the amount of $100,000,000 and punitive damages in the amount of $100,000,000, attorney's fees and cost.

Respectfully Submitted,


E. Scott Frison, Jr., Esq.
Bar No. 478092
Law Firm of E. Scott Frison, Jr.
1629 K. Street, NW Suite 300
Washington, DC 20036
240-398-9283
frisonlaw@aol.com,

18

## JURY TRIAL

Plaintiff requests a jury trial on all counts.

E. Scott Frison, Jr., Esq.

**JOINT MODIFICATION NO. 4 TO THE
June 13, 2001
MEMORANDUM OF AGREEMENT**

Between the United States Department of Justice

and

The District of Columbia and
The Metropolitan Police Department

Plaintiff's Exhibit

*1*



**D.C. Council Home**          **Home   Search   Help   ©**



## Welcome to the online source for the District of Columbia Official Code

DC ST § 5-1031
§ 5-1031. Commencement of corrective or adverse action.

DC ST § 5-1031

District of Columbia Official Code 2001 Edition <u>Currentness</u>
  Division I. Government of District.

   Title 5. Police, Firefighters, and Chief Medical Examiner. (Refs & Annos)

    Chapter 10A. Police and Firefighters Disciplinary Action Procedures.

➡**§ 5-1031. Commencement of corrective or adverse action.**

(a) Except as provided in subsection (b) of this section, no corrective or adverse action against any sworn member or civilian employee of the Fire and Emergency Medical Services Department or the Metropolitan Police Department shall be commenced more than 90 days, not including Saturdays, Sundays, or legal holidays, after the date that the Fire and Emergency Medical Services Department or the Metropolitan Police Department knew or should have known of the act or occurrence allegedly constituting cause.

(b) If the act or occurrence allegedly constituting cause is the subject of a criminal investigation by the Metropolitan Police Department, the Office of the United States Attorney for the District of Columbia, or the Office of Corporation Counsel, or an investigation by the Office of Police Complaints, the 90-day period for commencing a corrective or adverse action under subsection (a) of this section shall be tolled until the conclusion of the investigation.

CREDIT(S)

(Sept. 30, 2004, D.C. Law 15-194, § 502, 51 DCR 9406.)

HISTORICAL AND STATUTORY NOTES

Legislative History of Laws

Law 15-194, the "Omnibus Public Safety Agency Reform Amendment Act of 2004", was introduced in Council and assigned Bill No. 15-32, which was referred to the Committee on the Judiciary. The Bill was adopted on first and second readings on April 6, 2004, and June 1, 2004, respectively. Signed by the Mayor on June 24, 2004, it was assigned Act No. 15-463 and transmitted to both Houses of Congress for its review. D.C. Law 15-194 became effective on September 30, 2004.

DC CODE § 5-1031

Current through April 1, 2008

Copyright © 2008 By The District of Columbia. All Rights Reserved.
END OF DOCUMENT

(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Plaintiff's Exhibit

2



**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**METROPOLITAN POLICE DEPARTMENT**

June 1, 2005

Lieutenant Ronda Nunnally
102 Indian Spring Drive
Silver Spring, MD 20901

Re: Lt. Ronda Nunnally vs. Phil Graham (civilian)

Dear Lt. Nunnally:

This exit letter is being issued and serves as notification that the District of Columbia
Metropolitan Police Department has taken final administrative action in the above
referenced complaint. An investigation conducted jointly by the Diversity and EEO
Compliance Unit and the Internal Affairs Division determined that there was sufficient
evidence to support your claim of discrimination based on your gender (sexual
harassment) and a hostile work environment in violation of Title VII of the Civil Rights
Act of 1964, as amended. The matter and the Department's disciplinary
recommendations were forwarded to the Director of the District of Columbia's Office of
Personnel for final disposition.

If you are not satisfied with this determination, you may file a formal complaint of
discrimination with the District of Columbia Office of Human Rights (OHR) within
fifteen (15) days of your receipt of this letter. OHR is located at 441 4th Street, NW,
Suite 570-N, Washington, DC 20001. The telephone number is (202) 727-4559. You
may also file a formal complaint of discrimination with the U.S. Equal Employment
Opportunity Commission (EEOC), located at 1801 L Street, NW, Suite 100, Washington,
D.C. 20507. The EEOC may be contacted at (202) 419-0700.

Sincerely,

Jacqueline Johnson
Manager
Diversity and EEO Compliance Unit

Plaintiff's Exhibit

3

**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

RONDA NUNNALLY              :
         Plaintiff        :

   v.                    :     CA #: 04-005963
                        :     Calendar 6 – Judge Mary Terrell
                        :     Next Event: Status Hearing 12/18/07

DISTRICT OF COLUMBIA, et. al.  :
        Defendants   :

## SWORN STATEMENT

I, __Captain Melvin Gresham__ , HEREBY UNDER PENALTY OF PERJURY make the following statement.

In October, 2007, I was contacted by Assistant Attorney General Mr. Steve Anderson and Assistant Attorney General Kerslyn Featherstone requesting that I met with them to discuss my potential testimony as a witness for Lieutenant Ronda Nunnally. In October, 2007, I met with Mr. Steve Anderson and Ms. Kerslyn Featherstone privately at the Third District. They had requested the meeting to discuss Lieutenant Ronda Nunnally's lawsuit against the District of Columbia. During the course of the meeting, Mr. Anderson and Ms. Featherstone asked about the amount of time I had been a captain on the Police Department. When I informed them of the amount of time, Mr. Anderson commented " we need to get you promoted and find you a nice job at Police Headquarters."

I felt that their remarks about the length of time that I had been a captain and their remarks about "getting me promoting" prior to asking me questions about Lieutenant Nunnally's lawsuit and allegations were highly inappropriate and I construed it to be a bribe. I declined their offer. When I told them that I was ordered to target Lieutenant Nunnally because of her sexual harassment case, they attempted to make it a personality conflict between Lieutenant Nunnally and then Commander Mark Beach.

Plaintiff's Exhibit

4

When I described how Lieutenant Nunnally was assaulted by another lieutenant and I was ordered not to suspend the assaulting lieutenant, they attempting to state that Lieutenant Nunnally had some personality conflict with the assaulting lieutenant. Neither Ms. Featherstone nor Mr. Anderson seemed interested in the truth. It was apparent to me that the interview was designed to gage and alter my testimony. I also thought it was odd that Lieutenant Nunnally's attorney was not present for this "meeting."

Based on my aforementioned experience with the District of Columbia, previous distasteful interactions with Attorney Wendell Hall and after observing their retaliatory acts and their effect on Lieutenant Ronda Nunnally, I would be extremely reluctantly to file a complaint under Title VII for fear of retaliatory acts from District of Columbia authorities who seem to act without consequence. Furthermore I would not want to recommend to anyone employed by the District of Columbia Metropolitan Police that she or he file a sexual harassment complaint out of fear as the acts of retaliation she or he would be subjected to.

_____
(signature)

_____
(printed name)

Subscribed and Sworn before me this 17 day of December, 2007

My commission expires 27 day of Sept 2010

2

## Gresham, Melvin (MPD)

**From:** Gresham, Melvin (MPD)
**Sent:** Tuesday, March 25, 2008 4:36 PM
**To:** Mccoy, Larry (MPD)
**Subject:** Meeting with Lt. Smith

F.Y.I.

Commander,

I met with Lt. Smith in reference to some of the overtime issues that he shared with Commander Scott and also about the issue that surfaced in regards to the mailing of tickets and letters to individuals believed to be involved in prostitution related activities. I informed the Lieutenant that I had been directed to serve him with a P.D. 62 E for documentation for this particular violation. He became angry and referred to Assistant Chief Groomes as a " f @#&ing b#%ch^" and that he was going to the City Paper to complain about this matter.

I ordered him to cease using this profanity and that he was acting unprofessional. I also apologized to Mrs. Wright who overheard his remarks. I know that the Lieutenant has made allegations that I was some how retaliating against him, I am bringing this matter to your attention due to his threat of contacting the media. He did not specify what he intended on saying to the media.

                                                                    Captain Gresham

Plaintiff's Exhibit

5



# Third Police District

**1620 V Street, NW, Washington D.C., 20009 (202) 673-6935 FAX (202) 673-7630**

April 4, 2008

<u>**MEMORANDUM**</u>

**TO:**      Assistant Chief of Police
              Internal Affairs Bureau

**THRU:**    Assistant Chief of Police
              Patrol Services and School Security Bureau

**THRU:**    Commanding Officer  4/18/08
              Third District

**SUBJECT:**  Final Investigative Report Concerning an Allegation of Misconduct on the part of Lieutenant Michael Smith of the Third District (IS # 08-000261)

<u>**CHRONOLOGICAL NARRATIVE**</u>

On January 10, 2008, Sergeant George Maradiaga of the Third District reported to Captain Melvin E. Gresham that he had been the recipient of a pattern of disparaging remarks and unprofessional conduct by his immediate superior, Lieutenant Michael A. Smith. Sergeant Maradiaga reported that this form of disparate treatment initially began in March 2004 when he was promoted to the rank of sergeant and assigned to the Third District. The alleged hostile actions of Lieutenant Smith continued to increase with frequency after he was assigned under Lieutenant Smith's supervision in Patrol service Area (PSA) 307 in September 2007. Sergeant Maradiaga, after reporting the actions of Lieutenant Smith, asked that Captain Gresham meet with Lieutenant Smith informally and requested that the Lieutenant cease his unprofessional actions.

On January 10, 2008, Lieutenant Smith was verbally counseled by Captain Gresham and was ordered to cease his unprofessional behavior. He was further ordered not to confront the Sergeant about his request of ending what he interpreted as unfair treatment, due to the appearance of retaliation. On January 11, 2008, Sergeant Maradiaga forwarded an email to Captain Gresham that he received from Lieutenant Smith referencing the meeting he had with the captain. It should be further noted that Lieutenant Smith stated that he was informed by Sergeant Joseph Perren of this command that Sergeant Maradiaga did not want to file a complaint, but was solicited by Captain Gresham a total of 17 times to make the complaint.

Plaintiff's Exhibit

6

9

## **RECOMMENDATION**

Based on the overwhelming facts and circumstances disclosed in this investigative report, I recommend that the allegation that Lieutenant Michael A. Smith was involved in retaliatory and harassing conduct is **SUSTAINED** and that he be recommended for Adverse Action under the following Charges and Specifications:

Charge No. 1:      Violation of General Order Series 120.21, Section A Number 12, which prohibits: "Conduct Unbecoming" which reads:

Conduct unbecoming an officer, including acts detrimental to the good discipline, conduct that would affect adversely the employee's or the agency's ability to perform effectively, or violations of any law of the United States, or of any law, municipal ordinance, or regulation of the District of Columbia.

Specification No. 1:    On January 10, 2008, Lieutenant Michael A. Smith was inside the lieutenants office located at the Third District Headquarters where he described Sergeant George Maradiaga as *"a lazy piece of shit"* and that he never did any work. This statement was made by him during a counseling session that Captain Gresham was conducting. This statement was witnessed by Lieutenant Moses Vines.

Specification No. 2:    On January 10, 2008, Lieutenant Michael A. Smith was told to end any activity that would make Sergeant Maradiaga, feel that he was being harassed. Captain Melvin E. Gresham further stressed that Lieutenant Smith should not discuss these issues with the sergeant without a witness being present due to the sergeant perceiving the actions as retaliatory. Lieutenant Smith decided to disregard the directive and sent an email to Sergeant Maradiaga that states in part:

"*Captain Gresham then advises that you filed a complaint on me and I think it shows a lack of character during a time when I just want you to do all you can for the people we work for. You act like you don't care about them.*"

Based on the above listed charge and specifications this official recommends that Lieutenant Michael A. Smith be cited for adverse action.

A pre – write up conference was held with Commander Larry McCoy of the Third District on March 27, 2008.

Edward Delgado
Inspector

This must be brought to your attention for an official police investigation to be done. MPD Captain Melvin E. Gresham was in a accident with a Metro bus on 11/27/07, the official police report number is163-049, It happened in the 1500 block of U st. The bus pulled over to pick up passengers and Captain Gresham was driving a white SUV behind the bus. There was a accident and thankfully no one was injured. The police came and took a police report but did not give any tickets to anyone. At the stationhouse, Captain Gresham reviewed the accident report that was taken by Rodriguez, J.L. 242 Log# 15954, and told the officer to change the report and to give the bus driver two tickets and Captain Gresham told the officer what traffic tickets to write the bus driver to find the bus driver at fault. Captain Gresham reviewed his own police report that involved him which is definitely a conflict of interest. He told officer Rodriguez to change the report because he did not like what it said and it probably said that Captain Gresham was at fault. Knowing that his insurance rate will go up if he is found at fault of an accident, Captain Gresham told the officer to write the bus driver two tickets and told the officer for what two traffic violations to write the bus driver for. This is definitely a conflict of interest and Captain Gresham used his rank to have the officer change the original report. This is an abuse of his authority and a misuse of his official position and unlawful coercion of a lower ranking officer for personal gain and benefit. The report turned in by officer Rodriguez is not the original report, Captain Greshan bullied the officer because he is the officers superior, and had the officer change the report and unlawfully give the bus driver tickets that the bus driver did not deserve. If you look at the police report, the bus driver said that he pulled over to the curb lane to pick up passengers. The bus driver was in the center lane and pulled to the right. This part of U st is 3 lanes going towards 16th st, but the curb lane has cars parked there so it is really only two lanes. Captain Gresham claims that while traveling west on U st in the center lane, as he is passing by the bus, the bus is continuing to move forward causing the rear of the bus to pertrude further out into the center lane striking his vehicle. This doesn't make sense, Captain Gresham is behind the bus in the same lane, the bus pulls to the curb lane and the rear corner comes out in the center lane. Well the bus was in the center lane and continued to be in the center lane, what captain Gresham did was try to pass the bus but could not negotiate it and strick the back corner of the bus. It is impossible if the bus is going forward and captain Gresham is going forward that the bus is the striking vehicle. If anything captain Gresham was in the same lane as the bus and the bus pulled over with the back sticking into the center lane, then captain Gresham would have run into the corner of the bus head on. Captain Gresham should have been listed as the striking vehicle and give tickets for improper passing and colliding. Captain Gresham needs to be investigated for making false statements in a police report, conduct unbecoming because he is reviewing his own police accident report where he is an involved party, misuse of his official position for personal gain because he told the officer to make the bus driver at fault and he gains in this by not having to report to insurance company that he was at fault in a accident, abuse of his authority by directing the officer to change the report and to give the bus driver tickets. I trust that you will thoroughly and fully investigate this.

CC Commander McCoy
    Commander Klein
    Chief Groomes
    Councilman Jim Graham



Plaintiff's Exhibit

7

2

**Q: Yes, sir. Subsequently, you were given a copy of an Internal Affairs Division memorandum which addresses the fact that you are being interviewed in connection with a confidential investigation, wherein you are not to disclose to anyone other than the persons present in this interview with the exception of your attorney, the contents of any material whether written, tape recorded or otherwise in connection with this investigation. Lieutenant Smith, did you understand the contents of that memorandum?**

**A: I do.**

**Q: And, have you acknowledged your understanding of this memorandum by affixing, a-, affixing your signature to it?**

**A: I did.**

**Q: Ok. Sir, this investigation, like I said is in reference to a...a allegation of misconduct citing Melvin Gresham, Captain Melvin Gresham, of the Third District. And, the Internal Affairs Division received an anonymous letter which alleges that Captain Gresham was involved in an accident with a DC Metro Transit Bus. It is alleged that Captain Gresham directed the reporting officer who had been identified as Officer Jose´ L. Rodriguez, to change the narrative on the accident report and issue the bus driver two NOIs after the report, after the report was already completed and turned in. The officer complied and the underwriter of the letter alleges that the official abused his authority by directing the officer to change the report and issue the NOIs.**

**A: (Clearing throat)**

**Q: (Pages turning) I'm going to show you the actual anonymous letter. And, I just want to ask you just for the record did you compose this letter at all?**

**A: No, I had nothing to do with this letter.**

**Q: Ok.**

**A: But may I read it?**

**Q: Oh, sure. Sure.**

**A: Ok.**

**Q: I'll let, well I'll pause it. It's nine eighteen now, eighteen hours now. And, I'll let you go 'head and read it. (Laugh) Ok. We're going to go back on.**

**A: I have an idea.**

**Q: Ok. Time now is zero nine twenty hours. Lieutenant Smith, how did you h[...] respond to the scene of that accident?**

Plaintiff's Exhibit

8

A: I was off-duty. And, I monitored a, via the radio...

Q: Umm hmm.

A: ...on the way to work. And, I have a take-home car.

Q: Ok.

A: That Captain Gresham was involved in an accident. And, I responded to assist.

Q: Ok. What did you observe when you responded?

A: Well, I observed the, the captain's vehicle is, it was parked somewhat behind the, the bus. The bus was pulled to curb at the location.

Q: Ok.

A: At an angle.

Q: Oh, ok. The bus was at an angle?

A: Yeah, it, it, I also brought pictures depicting it. I just downloaded them very quickly just to have for you. I haven't had a chance to review the pictures, to refresh my memory though.

Q: Oh, ok. Thank you. Thank you for that. During your observation of the accident scene, was it clear that the bus driver should have been cited for any traffic violations?

A: No.

Q: Ok. During your observation was it clear that Captain Gresham should have been cited for any violations?

A: In my opinion, it was.

Q: Ok. Ok. And, how did you come to that acclu-, conclusion?

A: Well, I looked at the scene and the evidence and the impact marks.

Q: Umm hmm.

A: And, it was clear that the, the bus had damage resulting from the accident.

Q: Umm hmm.

4

A: That went from the back of the bus forward, indicating that the striking vehicle was moving…

Q: Umm hmm.

A: …when the bus was either slowing or stopped.

Q: Umm hmm.

A: There was a couple of things that I brought to the attention of the, the bus supervisor.

Q: Umm hmm.

A: Who re-, also responded to the scene. In the back of the bus there was a shard of plastic that matched a, a piece that had been shaved off from Captain Gresham's vehicle.

Q: Umm hmm.

A: The plastic molding that goes down the side.

Q: Yes.

A: And, the shard was jammed into a section of the bus going from back to forward. I pulled the, the shard of plastic out which measured about four inches.

Q: Umm hmm.

A: And, about half inch wide. And, I pull, and I could only pull it out from the rear going towards the back of the bus.

Q: Ok.

A: You know, I put it in my pocket and then, and then I brought it to the attention of the Metro bus supervisor, I said, "Now you can make your own assump-, assumption on which vehicle was moving here.

Q: Right.

A: Also, the bus itself was equipped with video.

Q: Ok.

A: None of the video was on the left side of the bus where the impact took place, but I brought it to the attention of the, the bus supervisor that since the bus video is on the sidewalk side, and also on the inside of the bus, he can compare the two. And, look at the reactions of the people on the bus…

Q: Umm hmm.

A: ...to be able to tell when the actual impact happened.

Q: Ok.

A: And, that in comparing the two he would be able to easily deduct where the bus was moving, pulling to the right, pulling to the left, any movements of the bus. And, then at the moment of the impact would be the reaction of the people on the bus. 'Cause it was no video on the side of the impact.

Q: Ok.

A: Those are the things I brought to the attention of the *inaudible* bus driver. Captain Gresham was very upset,...

Q: Umm hmm.

A: ...you know. And, he, he stated that the, the bus had came pass while he was sitting still and had sideswiped him. The evidence,...

Q: Umm hmm.

A: ...you know, show that, that would have been impossible.

Q: Umm hmm. *Inaudible.*

A: So, you know, the captain wanted Officer Rodriguez to cite the bus driver.

Q: Umm hmm.

A: And, I told Officer Rodriguez not to.

Q: Ok.

A: Ok.

Q: Ok.

A: I said, I told Officer Rodriguez to put down both events.... *AS REPORTED BY EACH DRIVER*

Q: Umm hmm.

A: ...ok, as reported by each driver.

Q: (Cle r throa...

A: ...ok, in the report, and not to cite anybody.

Q: Right.

A: But put in there that the, there was a video on the bus and that the video would be, be reviewed when it was available to make the determination of the accident.

Q: Umm hmm.

A: I figured this would, you know, save ~~faith~~ FACE for the captain.

Q: Right.

A: Rather than calling him to the evidence right there on the scene.

Q: I understand.

A: Because that would make an even bigger problem.

Q: Right.

A: So, I didn't tell ~~the~~ the captain my observation of the evidence right there on the scene in front of everybody.

Q: Right.

A: I DIDN'T WANT TO Embarrass the captain and,...

Q: Ok.

A: ...and, you know, go that route. So, just give him an opportunity to save ~~faith~~ FACE I just brought it to his attention about the video, and that, you know, that the video would be viewed later on. And, I ~~did~~ did this later on when he came to me and asked me why I told Officer Rodriguez not to issue any tickets.

Q: Right. Ok.

A: I did tell ~~the~~ the commander about ~~it~~ THE MATTER the next day ~~too~~.

Q: Oh, ok. Ok. Did Captain Gresham at anytime assist Officer R*inaudible*, Rodriguez with the preparation of that PD 10 while at the scene of the accident?

A: Not that I saw. ~~Rodriguez, you know~~, I stayed on the scene for awhile because the captain was upset and I didn't want to leave the scene right away. And, leave Officer Rodriguez there at the mercy of a superior officer without having a buffer.

7

Q: Ok.

A: So, I stayed there for awhile, you know. Me, and Rodriguez talked about it. And, that's when we had agreed to on the scene, to do at that time.
WHAT

Q: Umm hmm.

A: Rodriguez at the station, later came to me and was telling me that the captain was pressuring him to change the report and write the guy tickets.

Q: Umm hmm.

A: I said, "Do not write the guy tickets,...

Q: Umm hmm.

A: ...you know. Just refer him to me." And, that's when the captain came to me about the issue. And, then I threw the video in there. I said, "Well, if we fail to look at the video,..."

Q: Umm hmm.

A: ...you, I told the captain, "And, we issue tickets then there will be some allegation that we showed favoritism...

Q: Right.

A: ...without looking at the, all the evidence." But I knew what the evidence was...

Q: Yes.
A: ...before that.

Q: Absolutely. Ok. At anytime did you take a look at the PD 10?

A: No, I've never seen...ten 'til today when it's sitting in front of you.
THE PD

Q: Ok. I'm going to let you take a look at it and actually (pages turning), I guess with emphasis of the, the narrative and we're going to take a break right now. And, I'll ask you some questions about that. Time now, it's nine twenty-eight hours.

A: Ok.

Q: Ok. Time now is zero nine thirty hours. Captain, I'm sorry (laugh), Lieutenant Smith, you were just given an opportunity to review the PD 10 as prepared by Officer Rodriguez, of the Third District. And, in your expertise, although very extensive, can you tell me if any, if there are any discrepancies with regard to this accident report at all?

A: Well, starting with the first page, it says that pictures weren't taken. I took pictures.

Q: Ok.

A: Rodriguez knew I took pictures. I don't know why he said I didn't.

Q: Ok.

A: Maybe just used to writing no pictures all the time.

Q: Right.

A: The diagram, to get with the diagram first. He has the bus as a striking vehicle. Even the, even the diagram shows that the bus couldn't have been the striking vehicle unless the bus was backing up.

Q: Right. Ok.

A: And, then also as the letter states, you know, it's really physically impossible, just like I said before, that the bus could have been the striking vehicle.

Q: Umm hmm.

A: And, ev-, even according to the narrative itself.

Q: Umm hmm.

A: It's just physically impossible.

Q: Right. Ok. Ok. Getting back to the, this questioning here, while at 3D did you have any involvement when Officer Rodriguez, while he was preparing the PD 10 in relation to this accident? And, the answer to that is going to be, no, because this is the first time you ever saw the actual PD 10?

A: No, that's the first time I ever saw the…

Q: Ok.

A: …PD 10, *inaudible* having, had any interaction like it stated before…

Q: Umm hmm.

A: …where he came in and told me that the captain was pressuring him to, to write the tickets.

Q: Oh, ok.

A: And, I told him not to.

Q: Ok. Did you observe Captain Gresham interacting with Officer Rodriguez while they were both at the Third District?

A: No.

Q: Ok. Did you observe Captain Gresham intimidate Officer Rodriguez into pressuring him to cite the bus driver for the accident?

A: Well, his demeanor at the scene,...

Q: Umm hmm.

A: ...ok. And, it would circulate from his demeanor at the scene.

Q: Umm hmm.

A: He was upset and to tell the truth, I really can't say that it was a command influence pressure...

Q: Umm hmm.

A: ...because it would have been in the same kind of pressure as any other person that was involved in an accident, trying to prove his point no matter how wrong the point was.

Q: Umm hmm.

A: You see it all the time. You've been in patrol.

Q: Umm hmm.

A: So, you know what I'm talking about. They, it's just a...Like constant arguing and an argument that...

Q: Right.

A: ...just can't be presented.

Q: Ok. Ok. Now you said, yes, Officer Rodriguez had told you that the captain did pressure him into citing the bus driver.

A: Yes.

Q: Correct? *LATER AT THE STATION.* MS

A: Umm hmm.

Q: Ok. Were you aware that Officer Rodriguez prepared two PD 10s in reference to this incident?

A: No.

Q: Ok. Did you want to elaborate with that or was that your answer?

A: I just did (laugh).

Q: Ok (laugh).

A: I just don't know. I just don't know.

MS

Q: Ok. *WHAT HAPPENED AFTER THE CAPTAIN SPOKE TO ME IN THE OFFICE I DON'T KNOW*

A: *Inaudible,* so the ~~question~~ *ANSWER.* is I just don't know one way or another.

Q: Ok.

A: And, I didn't realize that he had written the tickets.

Q: Ok. Ok.

A: So, I guess that was your next question?

Q: Well, yeah, I, it was already asked and answered itself.

A: Umm hmm.

Q: Were you aware that Officer Rodriguez were, were, was given copies of the traffic regs in order to help him in his investigation of the PD 10s involving Captain Gresham?

A: By whom?

Q: By Captain Gresham.

A: No, I wasn't aware of that.

Q: Ok. Do you know if he was ever given any copies? Were you given it?

A: No.

**Q: Ok, all right. Do you believe that Captain Gresham acted improperly throughout this event?**

**A: Based on the allegations, if the allegations were sustained, yes.**

**Q: Ok. Ok. Initially, even outside of the allegation itself did you, coming up on the scene** and seeing all the interaction and whatnot, do you believe that Captain Gresham acted improperly?

A: Yes, he was probably more upset than he should have been.

**Q: Umm hmm.**

**A: And, I took the approach with him, you know, patted him on his shoulder, "Hey,** buddy, at least nobody was hurt," …

**Q: Right.**

A: …you know.

**Q: You, you did this to Captain Gresham?**

**A: (Laugh) Yeah.**

**Q: Yeah, ok. Ok.**

**A: And, I did it just like that.**

**Q: Right.**

**A: Just to try to…**

**Q: Umm hmm.**

**A: …calm the situation.**

**Q: Right. And, what was his response to you when…**

**A: Well, he was very angry at the bus driver.**

O: Umm hmm.

A: And, he was saying things like, yeah, this motherfucker…

**Q: Umm hmm.**

A:  ...came by and he hit my car.  Look at my car.  Look at all the fucking damage he did to the car, or something to that effect.

Q:  Umm hmm.

A:  Maybe not those exact words.

Q:  Right, right.

A:  This wasn't done in direct hearing of the public, 'cause it was nobody right with us.

Q:  Ok.

A:  So, I just wanted to point that out.

Q:  Ok, sure.  Do you know who may have composed (tap) this letter, anonymous letter?

A:  I suspect it was Officer Rodriguez.

Q:  Umm hmm.

A:  Or, someone Officer Rodriguez talked to.

Q:  Right.

A:  I had told a couple of people of, of the event, but not in that kind of detail,...

Q:  Right.

A:  ...you know.  When I talked with the commander, the information I gave to the commander, I say, "Yeah, you know, the captain was in an accident yesterday.  And, he says this bus hit him, but the captain must think I got out of the academy yesterday,...

Q:  Right.

A:  ...because it was physically impossible."  And, I told, and I told him about, I told the officer not to re-, you know, make a decision on the report one way or another, because of the existence and the additional video.  I told a couple of lieutenants in the office,...

Q:  Umm hmm.  Ok.

A:  ...you know, Lieutenant DeLisi; Lieutenant Neil... NGAL

Q:  Ok.

A:  ... two people I, I can pull off the top of my h...



**Q: Right.**

**A:** But it's not in that kind of detail. And, neither one of them could have composed that **letter.**

**Q: Ok.**

**A:** It would have had to have been somebody that Rodriguez either did have interaction with or he did it himself.

**Q: Right, right. Ok. All right, do you have anything you'd like to add for your statement to help me with this investigation?**

**A: Nothing that relates directly to the accident,...**

**Q: Yeah.**

**A:** ...you know. Captain's is probably one of the most competent people I know...

**Q: Yeah.**

**A:** ...when it comes to sitting down and looking over paperwork...

**Q: Oh, ok.**

**A:** ...and saying, hey, we need this, or we need that. But he's not very good about taking responsibility for.

**Q: Yeah.**

**A: ...anything that he did.** ~~There,~~ he called me up in ~~the station one time~~. He wanted to overwrite key, right.

**Q: Umm hmm.**

**A: And, he wanted me to bring it over** ~~here~~, **to the parking lot and throw it down to where the pumps were.**

**Q: Umm hmm.**

**A: ~~I mean~~ well it's on a pipe, so I made sure I threw it pipe first so it wouldn't land on the pipe.**

**Q: Umm hmm.**

*END OVER ^rs*

**A:** Well, he throws it back and he throws it ~~at the other~~ end and it lands on the key and it breaks the key.

**Q:** Umm hmm.

A: I'm like, "Dude, look what you did." And, he says, "No, you did it. Why did you throw it?" I'm like, " 'Cause you told me to throw it, and you used it and threw it back. And, it obviously wasn't broken when you used it."

**Q:** Right.

*ms ?*

A: It, it was, you know, and you know I know Captain Gresham well enough that he, I know his finances. I mean he's got, he got like a million dollars.

**Q:** Uh huh.

A: I mean he's worth over a million dollars easily.

**Q:** Umm hmm.

A: And, he was like, went into this big fuss about a fifty dollar key,...

**Q:** Umm hmm.

**A:** ...you know, when I'm out spending a couple thousand dollars a year on kids' parties and stuff like that.

**Q:** Umm hmm.

A: Like, you know, it just seemed like it was really unbalanced, but after this incident there was an incident involving a, a report for instance.

**Q:** Umm hmm.

**A:** And, it was a injured person and prop, hospital report that I'd told the officers to classify.

**Q:** Umm hmm.

**A:** It was a situation where the guy says, "Oh, I was beat up by this group." And, then it was, "No, I was in a fight." And, then it was like, "No, we were just horsing around and I fell." all right. And, then he had some injuries and cuts and stuff like that, that it could have been consistent either way.

**Q:** Umm hmm.

A: So, I told the officers, I said, "Make a injured person prop, hospital report, because that's what he's reporting right now.

Q: Umm hmm.

A: But put all this other information in there,"...

Q: Umm hmm.

A: ...right, because it got to go...

Q: Umm hmm.

A: ...to the detectives anyway,...

Q: Right.

A: ...right. Well, then there was a big stick about the classification. And, I got a seven fifty for under the teletype that says well, watch commanders will make sure this report's signed by the watch commander, right.

Q: Umm hmm.

A: And, this was like December thirteenth. It was just aft-, right after the accident,...

Q: Umm hmm.

A: ...ok. So, you know, I signed the seven fifty and I didn't think too much about it. Thinking, well you know, maybe I was the watch commander that day and when I went back I wasn't the watch commander. (Laugh) Captain Gresham was the watch commander. He's giving me a seven fifty for a duty that had, that he didn't do.

Q: Could you fight it?

A: Huh?

Q: Did you fight it?

A: Yeah, yeah, it's on appeal right now. Groomes said she was going to take it back, but it...

Q: Umm hmm.

A: ...slipped passed her desk, went all the way up...

Q: Umm hmm...

A: ...sitting there. But it was just...It was, there was just a, an example right there.

Q: Umm hmm.

A: And,...

Q: Ok. Ok.

A: ...you know.

Q: Ok. Well, if that's it, we're going to end...

A: (Sigh)

Q: ...this line of questioning. And, thank you, lieutenant, for coming by on your day-off. The time now is nine forty hours.

LT. _M_____ _____        3/19/08
**Signature**                                1919
                                             **Date and Time**

**Prepared by:** lir

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**

MAY 2 2008

**Metropolitan Police Department**

DRD# 241-08
IS# 08-000113

## MEMORANDUM

**TO:**          Captain Melvin Gresham
                 Third District

**SUBJECT:**     Notice of Proposed Adverse Action

As a result of your actions as described in the attached investigative report, the Department
hereby charges you with the following misconduct:

**Charge No. 1:**        Violation of General Order Series 120.21, Attachment A, Number
                         19, which states:   "Misuse of official position, or unlawful
                         coercion of an employee for personal gain or benefit."

**Specification No. 1:** In that, on January 7th, 2008, an anonymous letter was received,
                         disclosing that you acted improperly on the scene of an accident
                         and afterwards at the Third District, relative to an accident in
                         which you were personally involved.  Specifically, you misused
                         your official position as a supervisory employee to coerce a
                         subordinate employee to issue NOI's which should not otherwise
                         have been issued to the other driver and to submit an official
                         document designed to exculpate you from responsibility in said
                         accident.  This would have been a potential gain to you having a
                         clear driving record, and/or the prevention of an increase in your
                         auto insurance premiums.

**Charge No. 2:**        Violation of General Order Series 120.21, Attachment A, Number
                         12, which states, in part, "Conduct unbecoming an officer,
                         including acts detrimental to good discipline, conduct that would
                         adversely affect the employee's or the agency's ability to perform
                         effectively..."

**Specification No. 1:** In that, an anonymous letter received on January 7, 2008, disclosed
                         that you, while on the scene of an accident in which you were
                         personally involved on November 27, 2007, failed

CONFIDENTIAL – AUTHORIZED USE ONLY

Plaintiff's Exhibit

9

2

your composure and decorum. Specifically, it was reported that you were "visibly upset" and "irate to the extent that you were jumping up and down in the street."

Therefore, for the above dereliction, the department proposes to terminate your employment with the department.

Upon receipt of this notice, you have 21 days to submit, in writing, a response to this proposal. Your response must indicate whether you desire to have a departmental hearing. *Should you elect to have a hearing, a three member Panel will hear the evidence in support of the charges on June 10, 2008, at 0900 hours,* in Room 212, 801 Shepherd Street, N.W., in the District of Columbia.

Commander Michael Anzallo, Inspector Cleora Sharkey and Inspector Michael Reese have been designated by the Commander, of the Office of Human Resource Management, to hear these charges with Commander Michael Anzallo serving as Chairman of the Panel. This case shall be decided based on a standard of proof of a preponderance of evidence, i.e., that degree of relevant evidence which a reasonable mind, considering the record as whole, might accept as sufficient to support a conclusion that the matter asserted is true. You may be represented by an attorney licensed to practice in the District of Columbia or by a Union Representative, you must furnish any pertinent documents, or copies thereof, that you wish to offer as evidence. You must furnish the names of any witnesses you wish to testify on your behalf; and the name of the attorney who will represent you, not less than three days, exclusive of Saturdays, Sundays, and legal holidays, prior to the commencement of the proceedings.

All replies (or submission) in response to this notification must be sent directly to the Commander, Office of Human Resource Management, (not through channels) as expeditious receipt is imperative.

A complete copy of the investigative report on which the charges are based is attached for your information.

Jennifer Greene
Commander
Office of Human Resource Management

CONFIDENTIAL – AUTHORIZED USE ONLY

# THE LAW OFFICE OF E. SCOTT FRISON, JR.
## Attorney at Law

United States Supreme Court
U.S. Court of Appeals for District of Columbia
U.S. Court of Appeals Fourth Circuit
U.S. Court of Appeals for the Armed Forces

U.S. District Court for District of Columbia
U.S. District Court for Maryland
Court of Appeals for District of Columbia

May 8, 2008

Jennifer Greene
Commander
300 Indiana Ave., NW
6th Floor
Office of Human Resource Management
Washington, D.C. 20001

Re:    Response to Notice of Proposed Adverse Action and Petition for
       Immediate Reinstatement

Dear Commander Greene,

I have been retained by Captain Melvin Gresham to represent his interest in the matter of the "Notice of Proposed Adverse Action." Ex. 1.

As a threshold matter, Captain Gresham is an outstanding professional who has served the District of Columbia with a stellar performance record and uncompromising ethical orientation. The referenced "Notice" consists of two charges each with a specification alleging that "an anonymous letter received on January 7, 2008 disclosed" conduct that warranted the initiation of the proposed adverse action.

As you know the alleged conduct took place on November 27, 2007. That fact is undisputed and can be verified by reference to the Accident Report. Ex. 2, and the 60 Day Pending Report. Ex. 3.

The Proposed Adverse Action is controlled by District of Columbia Statute § 5-1031, which reads in pertinent part:

[N]o corrective or adverse action against any sworn member . . . of the . . . Metropolitan Police Department shall be commenced more than 90 days, not including Saturdays, Sundays, or legal holidays, after the date that the . . . Metropolitan Police Department knew or should have known of the act or occurrence allegedly constituting cause.

See Ex. 4.

Plaintiff's Exhibit

/0

1629 K. St., NW, Suite 300, Washington, D.C. 20036  240-398-9283 (phone)
frisonlaw@comcast.net

## Undisputed Facts

1.    The Accident Report at Ex. 2 reveals that the Incident in question took place on November 27, 2007.

2.    At the interview conducted by Internal Affairs, Lt. Michael A. Smith, a supervisor at the 3rd District, admitted that "I did tell . . . the Commander [Larry D. McCoy] about the matter the next day." Ex. 5.  Lt. Smith also admitted to the Internal Affairs investigating officer that:

> ". . . you know.  When I talked with the Commander, the information I gave to the Commander, I say 'yeah, you know, the Captain was in an accident yesterday.  And he says this bus hit him,  but the captain must think I got out of the academy yesterday . . . "

Ex. 6.

3.    The Internal Affairs Investigating Officer concluded that there was no basis for any adverse action against Captain Gresham but was overruled by her seniors in the Office of Internal Affairs.

4.    The Metropolitan Police Department knew or should have known the dates of Notice as well as the requirements at D.C. Statute § 5-1031.

## Argument

The admissions by Lt. Michael A. Smith make it clear that he, a supervisor, in the Metropolitan Police Department, knew on November 27, 2007 of the "act or occurrence allegedly constituting cause."

Applying the 90 day Rule at D.C. Statute § 5-1031, the "Proposed Adverse Action" must have been dated April 4, 2008.  Even if November 28, 2007,the date that Lt. Smith admitted conveying this information to Commander McCoy, is accepted as "the date that the . . . Metropolitan Police Department knew or should have known of the act or occurrence allegedly constituting cause" the Proposed Adverse Action had to be initiated on or before April 7, 2008 to be in compliance with D.C. Statute § 5-1031.

Applying the law to the facts of the case, the Notice of Proposed Adverse action dated May 2, 2008 violated D.C. Statute § 5-1031, violated the Constitutional Rights of Captain Gresham, DENIED him due process, and rise to the level of a Retaliatory Act.

## Corrective Action

Captain Gresham requests the following corrective action:

1.    Immediate reinstatement to full time status and restoration of police powers.

2.    Removal of the proposed adverse action and any reference to the same from Captain Gresham's record.

3.    The Department conducts an Internal Affairs Investigation to identify the source of the allegation against Captain Gresham.  Should the Department find that the source of the erroneous allegation was a member of the Metropolitan Police Department, that said member be subjected to adverse action.

I thank you for your prompt attention to this matter.

Sincerely,

E. Scott Frison, Jr., Esq.

cc:

Assistant Chief Alfred Durham

# THE LAW OFFICE OF E. SCOTT FRISON, JR.
## Attorney at Law

United States Supreme Court
U.S. Court of Appeals for District of Columbia
U.S. Court of Appeals Fourth Circuit
U.S. Court of Appeals for the Armed Forces

U.S. District Court for District of Columbia
U.S. District Court for Maryland
Court of Appeals for District of Columbia

**May 8, 2008**



MAY 0 8 2008

*Via Hand Delivery*

The Honorable Adrian M. Fenty
Mayor District of Columbia
City Office of Risk Management
ATTN: Claims
441 4th Street, NW, Suite 800 South
Washington, DC 20001
(202) 727-8600

Re:     Retaliation against Captain Melvin Gresham
        NOTICE per D.C. Code § 12-309
        Respondents:
        1.      Chief Cathy Lanier
        2.      Lt. Michael A. Smith
        3.      Officer J. L. Rodriguez # 2424

Dear Mayor Fenty,

Please accept this statutory Notice of Claim on behalf of Captain Melvin Gresham against the District of Columbia, the District of Columbia Metropolitan Police Department and its above named employees for continuing acts of retaliation and harassment against Captain Gresham.

Captain Gresham is a Whistleblower in that for several years he has reported and given testimony against fellow police officers found to be corrupt. He has participated in federal investigations and worked in consort with the FBI and other law enforcement agencies in an effort to identify and remove police officers from both rank and file and management who have betrayed their oath, their badge, and the City by engaging in criminal acts. The evidence will show that many of the very officers should have been arrested for their criminal acts remain with the police force and many have ascended to positions of supervisory control and responsibility despite the existence of the aforementioned evidence supporting criminal prosecution.

For his efforts Captain Gresham has been vilified by fellow officers such as Michael A. Smith who at a transcript of testimony given to Internal Affairs ma[de] disdain for Captain Gresham quite clear. See Ex. 1.

Plaintiff's Exhibit

11

Lt. Smith's comments give cause to particular concern when one examines the history of Lt. Smith within the Department. It is undisputed that he has a history of disciplinary problems many of which he has received reprimands. The facts are:

1.      In March 2008, Lt. Smith was reprimanded for violations of Department policy concerning the mailing of tickets to those charged with violations. Ex. 2. On information and belief, Ms. Wright will testify that Lt. Smith's remarks and demeanor brought discredit to the uniform he wears and the department to which he belongs. Captain Gresham was the officer affirming Lt. Smith's violations.

2.      In April 2008, Lt. Smith was disciplined for Misconduct. Captain Gresham counseled Lt. Smith about his unprofessional behavior in that incident. Ex. 3. Because of the sheer volume of the investigative report, only the first and last page is attached. Noteworthy therein is the finding that "Lieutenant Michael A. Smith was involved in retaliatory and harassing conduct is **SUSTAINED** and that he be recommended for Adverse Action . . ."

3.      Lt. Smith has an extensive history of disciplinary problems yet manages to remain in good standing with senior Metropolitan Police Department managers.

A comparison of the one page anonymous letter, Ex. 4, to the transcript testimony of Lt. Smith, see Ex. 3 provides probative evidence that the anonymous letter was more likely than not written by Lt. Smith. There is a unique similarity in the description of events, scene, and conduct of the parties. In his testimony to the investigation officer Lt. Smith speaks as if with personal knowledge of the wealth of Captain Gresham and other personal matters. In the letter the anonymous writer speaks with authority as to Captain Gresham's desire to avoid his insurance being increased.

Most disturbing is the admission by Lt. Smith at page 4 that he interfered with the investigation by the "couple of things that I brought to the attention of the, bus supervisor" and his admission at page 4 that he tampered with evidence by placing removing a piece of evidence from where he allegedly found it, placing it in his pocket, and then later telling the officer where it was found so that it might be included in the report as if the officer writing the report had discovered it and relied upon its significance in detailing fault. Other issues such as Lt. Smith's admitted repeated conversations with the officer, the bus driver, and the Metro Supervisor cause concern because Lt. Smith was off duty and had no actual basis for interjecting himself into the investigation. He could have called for an on duty supervisor to respond but did not do so.

When these acts are superimposed on his unsolicited comments at page 14, that Captain Gresham was worth a "million dollars" and his criticism of Captain Gresham at pages 14 – 16, it is reasonable to conclude that Lt. Smith sought to implicate Captain Gresham and when that failed he wrote the anonymous letter.

2

This conclusion will be explored should this matter result in a civil action. Captain Gresham has been and remains the target of retaliatory acts for his whistle blowing efforts to eradicate criminal conduct by uniformed officers, many of whom remain on the force. The latest act of retaliation is the Notice of Proposed Adverse Action at Ex. 5. I have on behalf of Captain Gresham have filed a Response to the Notice and have attached a copy hereto for your convenience. Ex. 6.

The ever escalating retaliatory acts have caused severe emotional harm to Captain Gresham, his mother and grand-mother. Captain Gresham has suffered the loss of his good name and professional reputation developed over 23 years of unblemished police service to the District of Columbia. I have been retained to represent the interest of Captain Gresham and his family and to facilitate protections afforded him by way of Federal Law and District of Columbia Statute. Should it be necessary to litigate this matter, I shall do so in Federal Court and seek compensation in an amount totaling of $100,000,000. Only such a monetary award will serve to thwart such egregious conduct in the future.

I shall forebear filing the above civil action for fifteen (15) days from the date of this letter. In an effort to resolve this matter short of litigation, Captain Gresham has authorized me to make the following offer of settlement:

1.    Immediate reinstatement to full time status and restoration of police powers and promotion to the grade of Inspector for which he has long been qualified.

2.    Removal of the proposed adverse action and any reference to the same from Captain Gresham's record.

3.    Payment of $1,000,000 in compensation

4.    Payment of Captain Gresham's attorney fees.

5.    Conduct an Internal Affairs Investigation to identify the source of the allegation against Captain Gresham. Should the Department conclude that the source of the "anonymous" allegation to be a member of the Metropolitan Police Department, that said member be subjected to adverse action for his / her malicious and wanton abuse of police process.

I thank you for your prompt attention to this matter.

Very Truly Yours,

E. Scott Frison, Jr., Esquire

3

1629 K. St., NW, Suite 300, Washington, D.C. 20036  240-398-9283 (phone)
frisonlaw@comcast.net

cc:
Councilmember Phillip Graham
Councilmember Kathy Patterson
Councilmember Mary M. Cheh
United States Attorney for the District of Columbia

1629 K. St., NW, Suite 300, Washington, D.C. 20036  240-398-9283 (phone)
frisonlaw@comcast.net



# DISTRICT OF COLUMBIA GOVERNMENT
## OFFICE OF RISK MANAGEMENT
### Risk Financing Division

Kelly Valentine
Chief Risk Officer

June 2, 2008

E. Scott Frison, Jr.
1629 K St., NW, Suite 300
Washington, DC 20036

Event Date:    1/7/2008
Reported Date: 5/8/2008
Claim Number: DMPSJ011775
Your Client:    Melvin Gresham

Dear Mr. Frison, Jr.

This will acknowledge receipt of your letter notifying the Mayor of a claim against the District of Columbia. Your letter was received in the D.C. Office of Risk Management on 5/9/2008. Your claim has been assigned to me, a staff member in the DC Office of Risk Management, Claims Bureau to investigate and handle.

**If you have not already done so**, please send the following information regarding your client in order to expedite the claims process: social security number, date of birth, address, please advise of the current status of any complaints filed with Human Resources along with copies of the complaints filed, cost, medical bills and/or other documents which bear on the validity or amount of your claim.

When sending additional documents/information, please refer to the claim number identified above and address it to:

Office of Risk Management
Claims Bureau
441 4th Street N. W.
Suite 800 South
Washington, D.C. 20001

This letter does not waive the District of Columbia's right to timely and complete notice within six months of the incident as required by D.C. Code Section 12-309.

"WARNING: It is a crime to provide false or misleading informati the District Government, or to any department or agency thereof, claim upon or against the District of Columbia, or any departmen

Plaintiff's Exhibit

*12*

agency thereof, knowing such claim to be false, fictitious, or
fraudulent.  Such an act is subject to imprisonment not more than one
year and assessed a fine of not more than $100,000 for each violation.

Very truly yours,

Charma Rhoden
Claims Specialist
(202) 724 2276





**Professional Development Bureau**
**Office of Human Resource Management**
**Disciplinary Review Division**

801 Shepherd Street, NW, Suite 207, Washington DC, 20011   (202) 576-7310

May 21, 2008

<u>**MEMORANDUM**</u>

**TO:**        Captain Melvin Gresham
              Third District

**SUBJECT:**    OFFICIAL REPRIMAND

You are hereby issued this Official Reprimand for the following dereliction of duty:

> On January 7, 2008, the Internal Affairs Division received an anonymous letter, wherein it was alleged that you exerted undue influence over the reporting officer who responded to prepare the accident report relative to an off-duty accident that you were involved in on November 27, 2007.

> Internal Affairs Agent Denise Garrett investigated the alleged misconduct.  Agent Garrett determined that your demeanor and subsequent confrontation with the reporting officer was intimidating and may have jeopardized the impartiality of the accident investigation.

> Consequently, you are being cited for violating General Order 120.21, Attachment A, Part A-25, which reads, "Any conduct not specifically set forth in this order, which is prejudicial to the reputation and good order of the police force, or involving failure to obey, or property observe any of the rules, regulations, and orders relating to the discipline and performance of the force."

This Official Reprimand is a written censor being issued to you as a formal notice of your unsatisfactory conduct.  This notice will be considered in performance evaluations and will be used in deciding greater degrees of disciplinary action within a three-year period.

A copy of this Official Reprimand shall be placed in your personnel folder.  This constitutes a corrective action as defined in DC Personnel Regulations, Chapter 16, Part 1, Section 1604, and may be appealed through the grievance procedure outlined in the regulations.

**DRD #241-08**
**IS #08-000113**

Plaintiff's Exhibit

13

This will be filed in your personnel folder as "Corrective Action".

Dierdre N. Porter
Inspector/Director

---

I, Captain Melvin Gresham, _Refusal Service_ hereby acknowledge on this
*(Member's Signature)*

date, ___5/21/08___, that this will be made a part of my personnel

This act
violates
the
Omnibus
Act
of
2004
the
Police
and
Five
Disciplnary
Act

DRD #241-08
IS #08-000113

**PROFESSIONAL DEVELOPMENT BUREAU**
**OFFICE OF HUMAN RESOURCE MANAGEMENT**
**DISCIPLINARY REVIEW DIVISION**
**COMMANDER'S RESOLUTION CONFERENCE WORKSHEET**

GRESHAM, MELVIN        CAPT   3D   1/7/08
Last Name / First Name   Middle Initial    Rank   Unit   Date of Incident    **90 Day Date**

DRD # 241-08                     IS# 08-000113

OIA# 08-010                      CRB# _____

**Charge(s)**

1) PREJUDICIAL CONDUCT          2) _____

**Penalty Range** CORRECTIVE ACTION

**Authorized by:** COP

Date of Resolution Hearing: 5/21/08      Agreement reached? NO

**If Yes, Final Agreement:**

Official Reprimand issued

*If the Final Agreement allows a member to forfeit leave in lieu of suspension, ENSURE that the member has sufficient leave to cover the term of the agreement prior to signing below. If a portion of the agreement is to be held in abeyance, provide a breakdown of the final penalty. Absent an alternative agreement, days in abeyance will be held for 12 months from the date of the Resolution Hearing.*

*If no agreement is reached, advise the member that the case will be handled in accordance with Article 12, Section 13, #4 of the MPD/FOP Labor Agreement.*

If applicable, scheduled suspension without pay date(s): N/A

**Official Conducting Hearing** Insp. Dierdre N. Porter    Insp. Dierdre Porter
                                     Printed Name              Signature

I have read the final agreement as stipulated and certify that it accurately reflects the agreement, or lack thereof, reached during the Resolution Hearing.

X Captain Melvin Gresham X                     Noted that this violates the 90 rule omnibus
     Member's Printed Name        Member's Signature & Date

X                                 X May 21, 2008
Union Representative's Printed Name    Union Representative's Signature & Date
Anthony D. Lewis
E. Scott Frost, Jr.                Initial & Agree notice is hereby given

Plaintiff's Exhibit

14

# PATROL SERVICES AND SCHOOL SECURITY BUREAU

## 60 Day Pending Report (All Districts)

This report contains all IS Investigations that are pending 60 or more days from the original date of incident.

**Assigned To    Third District**

Tuesday, March 25, 2008
11:19:32 AM

Plaintiff's Exhibit

15

| IS | Title: | Category: | Status: | Date of Incident: | Date To Unit: | (90) Day D |
|---|---|---|---|---|---|---|
| 9441 | IS 07003478, 3d, Officer Damaris Rivera, no show investigative report | IS Investigation | Open | 7/25/2007 | | |
| 9442 | IS07003452, 3d, Officer Damaris Rivera, no show investigative | IS Investigation | Open | 7/25/2007 | | |
| 8244 | IS08001043, 3D, Ofc. James E. Greene, MPD 10-50I & Property Damage, final | IS Investigation | RFC | 1/22/2008 | 3/14/2008 | 5/27/2008 |
| 876 | IS07006201, 3D, Ofc Gregory Jones, Vehicular Pursuit, Final | IS Investigation | Open | 12/15/2007 | | 4/24/2008 |
| 72 | IS# 07-004059 (Use of Force) Ofc M. Scott | IS Investigation | Open | 8/24/2007 | 9/24/2007 | 4/24/2008 |
| 87 | IS 07-006247, 3D, Officer Hammond, Steven, MPD Accident | IS Investigation | RFC | 12/15/2007 | 1/8/2008 | 4/24/2008 |
| 12 | IS# 07-006078 Allegation Lost MPD Property | IS Investigation | Open | 12/15/2007 | 1/9/2008 | 4/24/2008 |
| 302 | Misconduct involving Captain Melvin Gresham 3D | IS Investigation | Open | 11/27/2007 | 1/10/2008 | 4/4/2008 |
| 748 | IS# 07-003478, 3d, Officer Damaris Rivera, No Show Investigative Report | IS Investigation | Open | 7/25/2007 | 1/11/2008 | |
| 92 | IS# 07-006262 (Orders/Directives Violation) Unknown Member | IS Investigation | Open | 12/27/2007 | 1/21/2008 | 5/6/2008 |
| 165 | IS# 07-002381 Lt. Edward Delisi late submission 11/27/07 | IS Investigation | RFC | 11/27/2007 | 2/4/2008 | 4/4/2008 |
| 67 | IS# 08-000261 Misconduct --Smith,M. | IS Investigation | Open | 1/11/2008 | 2/5/2008 | 5/15/2008 |
| 1319 | IS# 08-000219 Ojeda- unknown poor/lack of police services 12/20/07 | IS Investigation | Open | 1/14/2008 | 2/8/2008 | 4/7/2008 |

*Handwritten annotations:*
Submitted copies 3/14/08
Submitted copies 3/14/08
Submitted copies 3/14/08
Cmdrs Box 4/11/08
Assigned to Sgt. Penn - Submitted
Assigned to PSA 300 - Sgt. Lanord
Assigned to PSA 304 - Pearce - Submitted
Assigned to Insp. Delgado
Duplicate - Submitted 3/14/08
Submitted copy on 3/14/08 - Smith,M.
Assigned to Insp. Delgado,
(x Final) 3/24/2008 ma4y6, Baker
Michigan Rd, Due PSB

Tuesday, March 25, 2008

**METROPOLITAN POLICE DEPARTMENT**
**Internal Affairs Bureau**
Internal Affairs Division

**MEMORANDUM**

**TO:**        Assistant Chief of Police
              Internal Affairs Bureau

**THRU:**      Inspector
              Internal Affairs Division

**THRU:**      Captain
              Internal Affairs Division

**THRU:**      Lieutenant
              Internal Investigations Branch ~ Team II

**DATE:**      Monday, March 17, 2008

**SUBJECT:**   Final Investigative Report Concerning the Allegation of Misconduct by
              Captain Melvin Gresham, Third District, IS # 08000113, IAD # 08-10

**CHRONOLOGICAL NARRATIVE SECTION**

An anonymous letter was forwarded to the Internal Affairs Division.  It indicated that on
Tuesday, November 27, 2007, Captain Melvin Gresham, Third District, was involved in a
traffic accident while in an off-duty capacity in the 1500 Block of U Street, N.W.
**(ATTACHMENT #1)** The writer alleged that Captain Gresham unduly influenced and
directed the reporting officer to change the narrative section in the accident report and
issue the bus operator two (2) Notices of Infractions (NOIs) after the original report was
already completed and submitted for review.  **(ATTACHMENT #2)**

**MEMBER(S) INVOLVED**

Captain:                         Melvin Gresham
Duty & Uniform Status:           Off Duty / Casual Clothes
Personal:                        Black Male / Age 45
Assignment:                      Third District
Appointed to MPD:                October 29, 1984
Current Duty Status:             Full Duty
Impairment                       None known

Plaintiff's Exhibit

17

1

Officer Rodriguez believed Captain Gresham placed undue pressure upon him while investigating the accident, he should have reported the instance to his superiors or the Internal Affairs Division.

This investigation shows that Captain Lamont Coleman, the Third District Watch Commander at the time of the incident, was not fully advised of the gravity of the incident by the ranking official on the scene. As such he did not respond to the scene and he was not remiss in his duties as he had no information to believe the accident scene was not being properly investigated. Lieutenant Michael Smith, although off-duty, responded to the scene of the accident and was the ranking official on the scene. As such, is was his responsibility to ensure the integrity of the scene was protected.

## RECOMMENDATIONS

Therefore, it is recommended that the investigation into **IAD Case Numbers 08-10** should be **CLOSED** and it is further recommended that Captain Melvin Gresham, Patrol Services and School Security Bureau, Third District, be cited for **CORRECTIVE ACTION** and issued an **Official Reprimand** with regards to his actions relative to the aforementioned incident.

Additionally, it is recommended that Lieutenant Michael Smith, Patrol Services and School Security Bureau, Third District, be cited for **CORRECTIVE ACTION** and issued a **P.D. 750 (Dereliction Report)** with regards to his actions and inactions relative to the aforementioned incident.

Finally, in regards to Officer Jose L. Rodriguez in **IAD # 08-87**, it is recommended that Officer Jose L. Rodriguez' conduct should be documented in the form of a **P.D. 62-E** with regards to his actions relative to the investigation of the aforementioned incident.

## MISCELLANEOUS

Before completion of this final report, the undersigned agent conducted a preliminary conference with Lieutenant Dean Welch, Internal Affairs Division, who concurred with the findings and recommendation of this report.

Denise A. Garrett
Agent/Sergeant
Internal Investigations Branch ~ Team II

15

# METROPOLITAN POLICE DEPARTMENT
## Internal Affairs Bureau
### Internal Affairs Division

April 12th, 2008

Concur /P/ ____ 4/18/08

**MEMORANDUM**

TO:          Assistant Chief
             Internal Affairs Bureau

THRU:        Inspector/Director
             Internal Affairs Division   Concur /P/ APR 1 2 2008

SUBJECT:     Dissent Regarding the Proposed Penalties Recommended in the Case of
             Captain Melvin Gresham, **IS#08000113, IA#08-010**

Your attention is invited to the attached investigation completed by Agent Denise
Garrett of the IAD - Internal Investigations Branch. The investigation regards the
conduct of Captain Melvin Gresham of the Third District during an incident which
occurred on November 27th, 2007, which was brought to the attention of the Internal
Affairs Division in an anonymous letter received on January 7th, 2008.

In brief, the letter alleged that Captain Melvin Gresham had been involved in an off-duty
auto accident in his assigned district on November 27th, 2007, and had exerted undue
influence on the reporting officer, Jose Rodriguez, causing the other party, a Metrobus
driver, to be unjustly charged with the accident.

While Agent Garrett's investigation sustains Captain Gresham's misconduct, I feel that
her recommendation regarding the issuance of an Official Reprimand as the penalty to
be wholly insufficient. Despite the fact that Captain Gresham was not shown to have
issued any *direct* order(s) to Officer Rodriguez to change or modify his accident report,
the report is rife with examples of how Captain Gresham *unduly influenced* the outcome
of the investigation by "overseeing" the production of the accident report. This caused
Officer Rodriguez, who is described by a sergeant with peripheral involvement as a
competent officer who has never had a problem with issuing the appropriate NOI to a
motorist involved in an accident, to unjustly issue two NOI's to the Metrobus driver
involved. This occurred even though the scenario/explanation posed by Captain
Gresham as the cause of the accident is highly unlikely, and perhaps even physically
impossible. Nevertheless, the officer was somehow convinced to issue the NOI's. This
could be characterized as an egregious abuse of authority and/or breach of ethical
behavior and would be best addressed through the application of Adverse Action.

Plaintiff's Exhibit

18

One issue left unaddressed by Agent Garrett, is Captain Gresham's conduct on the scene of the accident. He is described by various persons interviewed during the investigation as, "irate to the extent that he was jumping up and down in the street." He was also described as being, "visibly upset," and insistent on the Metrobus driver being issued an NOI. This conduct, in full view of the public, had the potential to embarrass this Department to the extent that it should also be addressed through Adverse Action.

In light of the aforementioned facts, it is my recommendation that Captain Melvin Gresham be submitted for **Adverse Action** on the following Charges and Specifications:

| | |
|---|---|
| CHARGE #1: | Violation of General Order 120.21, Attachment A, Number 19, which states, **"Misuse of official position, or unlawful coercion of an employee for personal gain or benefit."** |
| SPECIFICATION #1: | In that, an anonymous letter received on January 7th, 2008, disclosed that Captain Melvin Gresham, while on the scene of an accident *in which he was personally involved* on November 27th, 2007, and subsequent to that accident while at the Third District, did misuse his official position as a supervisory employee to coerce a subordinate employee to issue NOI's which should not otherwise have been issued to the other driver *and* to submit an official document designed to exculpate him from responsibility in said accident. The potential gain or benefit to Captain Gresham being a clear driving record, and/or the prevention of an increase in his auto insurance premiums. |
| CHARGE #2: | Violation of General Order 120.21, Attachment A, Number 12, which states, in part, "Conduct unbecoming an officer, including acts detrimental to good discipline, **conduct that would adversely affect the employee's or the agency's ability to perform effectively…"** |
| SPECIFICATION #1: | In that, an anonymous letter received on January 7th, 2008, disclosed that Captain Melvin Gresham, while on the scene of an accident *in which he was personally involved* on November 27th, 2007, publicly displayed behavior during which he was described as being, "visibly upset," and, "irate to the extent that he was jumping up and down in the street." |

2

Agent Garrett's investigation also concludes that *there was actionable conduct* on the part of both Officer Rodriguez, and Lieutenant Michael Smith; and *NO actionable conduct* on the part of Captain Lamont Coleman or Sergeant Anthony Washington. I have addressed the conduct of each of the four members as follows:

I agree that Officer Rodriguez was placed in an extremely difficult situation during this incident. I also agree that he could have resolved or abated this matter, simply by calling it to the attention of a superior official, whether it was another captain, or his district's commander. As such, I concur with Agent Garrett's recommendation that **Officer Jose Rodriguez** be <u>issued a PD-62e</u> admonishing him to do just that, should he ever find himself in a similar situation.

Insofar as the actions of Lieutenant Michael Smith are concerned, I believe that it was both reasonable and prudent for him to stop at the scene of an accident in which an official of a superior rank was involved to serve as a buffer between the captain and the subordinate member. However, I DISAGREE with Agent Garrett's assertion that his actions on the scene amounted to the interference with the case of another member. On the contrary, Lieutenant Smith's actions in directing Officer Rodriguez not to issue any NOI's to the Metrobus driver were, in my opinion, the correct action given the personal involvement of Captain Gresham and his insistence that they be issued. Had Lieutenant Smith's order been allowed to stand, a miscarriage of justice *would not have been perpetrated* on the bus driver with issuance of the NOI's, and this case, in all likelihood, would never have come to the attention Internal Affairs. As such, I recommend that <u>no disciplinary action be taken</u> against **Lieutenant Michael Smith**.

Regarding Captain Colman's involvement, it is my belief that he should have responded to the scene, knowing that a peer had been involved in a traffic accident, and that a subordinate of that peer would have to be responsible for investigating it. Had he responded, his presence may have mitigated the actions of Captain Gresham and, perhaps, prevented our need to investigate this incident. Instead, his inaction allowed a breach of ethics to occur, and potentially engendered a sense of disrespect for supervisory authority by all those of lower rank who learned of the event. For this, I recommend that **Captain Lamont Coleman** receive <u>corrective action at the level of an Official Reprimand for Conduct Unbecoming (G.O. 120.21, Attachment A, Number 12)</u> for his failure to intercede in a situation that allowed for a violation of the Metropolitan Police Department's Code of Ethics.

As far as the unexplored involvement of Sergeant Anthony Washington is concerned, for which Agent Garrett made no recommendation, I find that he is culpable in this incident as well. Sergeant Washington admittedly detected the defect in the PD-10, Accident Report, submitted by Officer Rodriguez, but after being told of the source of the variance, i.e., the involvement of Captain Gresham and knowing of the inappropriate issuance of NOI's to the Metrobus driver, he apparently took no action to address or resolve the matter. As such, it is my recommendation that **Sergeant Anthony Washington** receive <u>corrective action at the level of an Official Reprimand for the Willful</u>

3

<u>Failure to Promptly Report (G.O. 120.21, Attachment A, Number 13)</u> a violation of the Metropolitan Police Department's Code of Ethics.

I stand ready to discuss these recommendations should you so desire.

Ralph W. McLean
Captain
Internal Investigations Branch

4

U.S. Department of Justice

Civil Rights Division

MJK:elb:km
DJ 144-16-0

*Criminal Section - PHB*
*950 Pennsylvania Avenue, N.W.*
*Washington, DC 20530*

Mr. Melvin E. Gresham
4700 Mann Street
Capitol Heights, MD 20743

MAY 3 0 2008

Dear Mr. Gresham:

This is a response to your letter postmarked April 7, 2008, in which you allege that Jose Acosta, former Assistant Chief of Police of the District of Columbia's Metropolitan Police Department, tried to force you to participate in police misconduct in 2001. You also claim that he targeted you for retaliation and harassed you because you refused to comply with his unethical orders from 2001-2003.

The Criminal Section of the Civil Rights Division is responsible for enforcing federal criminal civil rights statutes. Much of our enforcement activity relates to the investigation and prosecution of deprivations of civil rights under color of law. These matters generally involve allegations of excessive physical force or sexual abuse by law enforcement officers.

We have carefully reviewed the information which you furnished. However, we have determined that your complaint does not involve a prosecutable violation of federal criminal civil rights statutes. Accordingly, we are unable to assist you.

For your information, the Special Litigation Section of the Civil Rights Division handles incidents concerning the Memorandum of Agreement with the Metropolitan Police Department. The Special Litigation Section investigates and prosecutes allegations concerning patterns and practices of misconduct by police departments. We have forwarded a copy of your letter to that office for their review. You can also write directly to the Special Litigation Section at 950 Pennsylvania Avenue, N.W., PHB, Washington, D.C. 20530.

Please note that federal criminal civil rights laws have a five year statute of limitations from the date of the incident, except in a case involving an intentional killing in which case there is no statute of limitations, or in a case involving religious interference in which case the statute of limitations is seven years.

Plaintiff's Exhibit

*19*

-2-

You may also wish to contact the nearest legal aid program or the local bar association to determine whether they may be able to assist you.

Sincerely,

Mark J. Kappelhoff
Section Chief
Criminal Section
Civil Rights Division

By:

Elizabeth Brown
Paralegal Specialist
Criminal Section

cc: Special Litigation Section

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS** Captain Melvin Gresham

**DEFENDANTS** Chief Cathy Lonier, et al

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

Prince George's County

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** D.C.
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
T[...]

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
E. Scott Frison, Jr
Low Firm of E. Scott Frison
1629 K St. N.W. Ste 300, D.C. 20036

Case: 1:08-cv-01117
Assigned To : Robertson, James
Assign. Date : 6/27/2008
Description: General Civil

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 4 Diversity
(Indicate Citizenship of Parties in item III)

### III CITIZEN[...]
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**☐ A. Antitrust**

☐ 410 Antitrust

**☐ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☐ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**☒ E. General Civil (Other) OR ☐ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

⑦

| □ **G.** *Habeas Corpus/ 2255*<br>□ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ **H.** *Employment Discrimination*<br>□ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ **I.** *FOIA/PRIVACY ACT*<br>□ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | □ **J.** *Student Loan*<br>□ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| □ **K.** *Labor/ERISA (non-employment)*<br>□ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ **L.** *Other Civil Rights (non-employment)*<br>□ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ **M.** *Contract*<br>□ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ **N.** *Three-Judge Court*<br>□ 441 Civil Rights-Voting (if Voting Rights Act) |

**Ⓥ ORIGIN**
ⓧ 1 Original Proceeding  □ 2 Removed from State Court  □ 3 Remanded from Appellate Court  □ 4 Reinstated or Reopened  □ 5 Transferred from another district (specify)  □ Multi district Litigation  □ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

Title 5 U.S.C. 2301 (b)(8) ; D.C. Code §1-615.51

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS □ ACTION UNDER F.R.C.P. 23   **DEMAND $** $100,000,000   Check YES only if demanded in complaint  **JURY DEMAND:** ☒ YES  □ NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  □ YES  ☒ NO   If yes, please complete related case form.

DATE 6/25/08   **SIGNATURE OF ATTORNEY OF RECORD**

27

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.